1 ELLEN M. MAHAN
Deputy Section Chief
2 Environmental Enforcement Section
Environment & Natural Resources Division
3 U.S. Department of Justice
Post Office Box 7611
4 Washington, DC  20044-7611

5 ELISE S. FELDMAN
Trial Attorney
6 Environmental Enforcement Section
Environment & Natural Resources Division
7 U.S. Department of Justice
301 Howard Street, Suite 1050
8 San Francisco, California  94105
Telephone: (415) 744-6470
9 Facsimile:  (415) 744-6476
E-mail: elise.feldman@usdoj.gov

10 Attorneys for Plaintiff United States of America

11 NANCY FELDMAN
Senior Deputy District Prosecutor
12 South Coast Air Quality Management District
21865 Copley Drive
13 Diamond Bar, California 91765
Telephone: (909) 396-3455
14 Facsimile:  (909) 396-2961
E-mail: nfeldman@aqmd.gov

15 Attorney for South Coast Air Quality Management District

16 JONATHAN  S. MARTEL
Arnold & Porter LLP
17 555 Twelfth Street, NW
Washington, DC 20004-1206
18 Telephone: 202.942.5470
Fax: 202.942.5999
19 E-mail: Jonathan_Martel@aporter.com

20 Attorney for Lifoam Industries, LLC

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

21 UNITED STATES OF AMERICA
22 and SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT
23                    Plaintiffs,
24 v.
25 LIFOAM INDUSTRIES, LLC,
PREVIOUSLY KNOWN AS
26 LIFE-LIKE PRODUCTS LLC
27                    Defendant.
28

Case No. 10-cv-03825-AHM(FFMx)

**CONSENT DECREE**

JS-6

FILED
CLERK, U.S. DISTRICT COURT

JUL 2 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 2 -

II.     APPLICABILITY AND BINDING EFFECT . . . . . . . . . . . . . . . . . . - 3 -

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -

IV.     CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

V.      COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

VI.     INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

VII.    REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

VIII.   RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

IX.     STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

X.      FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 16 -

XI.     DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 18 -

XII.    INFORMATION COLLECTION AND RETENTION . . . . . . . . . . - 20 -

XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . - 22 -

XIV.    COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 23 -

XV.     NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 23 -

XVI.    EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

XVII.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

XVIII.  MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -

XIX.    TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

XX.     PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -

*U.S. and SCAQMD v. Lifoam Industries*                     Consent Decree - Civil Action No.

1  XXI.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -

2  XXII.   INTEGRATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -

3

4  XXIII.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 27 -

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

**CONSENT DECREE**

Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff South Coast Air Quality Management District ("SCAQMD" or the "District") concurrently with lodging this Consent Decree, have filed a complaint (the "Complaint") in this action pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), alleging that Lifoam Industries, LLC, previously known as Life-Like Products LLC ("Defendant") violated the CAA and the federally approved California State Implementation Plan ("SIP"), including the SCAQMD Rule 1175, by operating its expanded polystyrene foam block manufacturing facility in Vernon, Los Angeles County, California (the "Facility") in violation of the emissions limitations and control requirements in Rules 201, 203, 1175 and 2004(f)(1), as incorporated in the SIP.

Defendant does not admit any liability to the United States or SCAQMD arising out of the transactions or occurrences alleged in the Complaint.

The United States, SCAQMD, and Defendant, collectively the "Parties," recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, 1355.  Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 1395(a) and 42 U.S.C. § 7413(b), because the violations alleged in the Complaint are alleged to have occurred in this judicial district.  For purposes of

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 2 -

1   this Decree, or any action to enforce this Decree, Defendant consents to the Court's
2   jurisdiction over this Decree and any such action and over Defendant and consents
3   to venue in this judicial district.

4       2.   For purposes of this Consent Decree, Defendant agrees that the
5   Complaint states claims upon which relief may be granted pursuant to Section
6   113(b) of the CAA, 42 U.S.C. § 7413(b) and Rules 201, 203, 1175, and 2004(f)(1)
7   of the SIP.

8       3.   Notice of the commencement of this action has been given to the
9   California Air Resources Board, as required by Section 113(b) of the CAA,
10  42 U.S.C. § 7413(b) and to the District.

**II. APPLICABILITY AND BINDING EFFECT**

11
12      4.   The obligations of this Consent Decree apply to and are binding upon
    the United States, SCAQMD, and upon Defendant and any successors, assigns, or
13  other entities or persons otherwise bound by law.
14
15      5.   At least thirty (30) Days prior to any transfer of ownership or
    operation of the Facility, in whole or in part, Defendant shall provide a copy of this
16  Consent Decree to the proposed transferee and shall simultaneously provide
17  written notice of the prospective transfer, together with a copy of the proposed
18  Title V permit transfer agreement, to EPA Region IX, the United States
19  Department of Justice ("DOJ"), and SCAQMD, in accordance with Section XV
20  (Notices) of this Decree. Any attempt to transfer ownership or operation of the
21  Facility without complying with this Paragraph constitutes a violation of this
22  Decree. No such transfer, whether in compliance with this Paragraph or otherwise,
23  shall relieve the Defendant of its obligations under this Consent Decree, unless:

24      a.   the transferee agrees in writing to undertake the obligations
25  required by this Consent Decree with respect to the Facility, and to intervene as a
26  Defendant in this action for the purpose of being bound by the applicable terms of
27  this Consent Decree;

28      b.   the transferee provides to EPA Region IX, DOJ, and SCAQMD

*U.S. and SCAQMD v. Lifoam Industries*        Consent Decree - Civil Action No.

1  with information sufficient to demonstrate that the transferee has the technical and

2  financial means to comply with the applicable obligations of this Consent Decree;

3  and

4        c.    EPA consents in writing to substitute the transferee for

5  Defendant with respect to such obligations.

6        6.    Defendant shall provide a copy of this Consent Decree to its

7  respective officers, employees, and agents whose duties might reasonably include

8  compliance with any provision of this Decree, as well as any contractor retained to

9  perform work or to provide services required under this Consent Decree.

10  Defendant shall condition any such contract upon performance of the work in

11  conformity with the terms of this Consent Decree.

12        7.    In any action to enforce this Consent Decree, Defendant shall not raise

13  as a defense the failure by any of its officers, directors, employees, agents or

14  contractors, or each other, to take any actions necessary to comply with the

    provisions of this Consent Decree.

15                          **III. DEFINITIONS**

16        8.    Terms used in this Consent Decree that are defined in the CAA or in

17  regulations promulgated pursuant to the CAA shall have the meanings assigned to

18  them in the CAA or such regulations, unless otherwise provided in this Decree.

19  Whenever the terms set forth below are used in this Consent Decree, the following

20  definitions shall apply:

21        A.    "Bead Aging Operation" shall mean the enclosure at the

22  Facility where expanded beads (pre-puff) are kept for stabilization and drying;

23        B.    "Consent Decree" or "Decree" shall mean this Decree;

24        C.    "Day" shall mean a calendar day unless expressly stated to be a

25  working day. In computing any period of time under this Consent Decree, where

26  the last day would fall on a Saturday, Sunday, or federal holiday, the period shall

27  run until the close of business of the next working day;

28        D.    "Defendant" shall mean Lifoam Industries, LLC, previously

*U.S. and SCAQMD v. Lifoam Industries*          Consent Decree - Civil Action No.

known as Life-Like Products LLC;

E.    "Deviation" shall mean a period during Manufacturing Operation during which the RTO combustion chamber is less than 1,400 degrees Fahrenheit, except as permitted by Section E73 of the SCAQMD Permit.

F.    "Effective Date" shall have the definition provided in Section XVI ("Effective Date") of this Consent Decree.

G.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

H.    "Facility" shall mean the EPS manufacturing and processing facility located at 2340 East 52nd Street, in Vernon, Los Angeles County, California  90058;

I.    "Manufacturing Emissions" shall mean any emissions of VOC that occur during the Manufacturing Operation;

J.    "Manufacturing Operation" shall mean the pre-expansion, aging and molding steps of the processing of an expandable polystyrene product;

K.    "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

L.    "Parties" shall mean the United States, SCAQMD, and Lifoam Industries, LLC, previously known as Life-Like Products LLC;

M.    "Reportable Deviation" shall mean any Deviation lasting at least sixty (60) minutes.

N.    "RTO" shall mean the air pollution control device installed at the Facility for the purpose of controlling Manufacturing Emissions;

O.    "Rule 201" shall mean District Rule 201 as amended by the District in January 1990 and approved by EPA into the SIP in 1999;

P.    "Rule 203" shall mean District Rule 201 as amended by the District in January 1990 and approved by EPA into the SIP in 1999;

Q.    "Rule 1175" shall mean District Rule 1175 as amended by the District in 1994 and approved by EPA into the SIP in 1994;

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 5 -

1      R.      "Rule 2004(f)(1)" shall mean subsection (f)(1) of District Rule

2   2004 approved by EPA into the SIP in 2003.

3      S.      "Section" shall mean a portion of this Decree identified by a

4   Roman numeral;

5      T.      "SCAQMD Permit" shall mean the District-issued permit for

6   the Facility which includes the operating parameters to be followed by Defendant

7   in order to ensure that the Facility is in compliance with Rule 1175.

8      U.      "United States" shall mean the United States of America, acting

9   on behalf of EPA; and

10      V.      "VOC" shall mean volatile organic compound as defined in 40

11   C.F.R. Part 51.100(s).

## IV.  CIVIL PENALTY

12      9.      Within thirty (30) Days after the Effective Date of this Consent

13   Decree, Defendant shall pay a civil penalty to the United States of two hundred

14   ninety-two thousand five hundred dollars ($292,500.00) together with interest

15   accruing from the date on which the Consent Decree is lodged with the Court, at

16   the rate specified pursuant to 28 U.S.C. § 1961 as of the date of lodging.

17      10.   Defendant shall pay the civil penalty due by FedWire Electronic

18   Funds Transfer ("EFT") to the United States Department of Justice in accordance

19   with written instructions to be provided to Defendant, following lodging of the

20   Consent Decree, by the Financial Litigation Unit of the United States Attorney's

21   Office for the Central District of California.  At the time of payment, Defendant

22   shall send a copy of the EFT authorization form and the EFT transaction record,

23   together with a transmittal letter, which shall state that the payment is for the civil

24   penalty owed pursuant to the Consent Decree in *United States v. Lifoam Industries,*

25   *LLC, previously known as Life-Like Products LLC*, and shall reference the civil

26   action number and DOJ case number 90-5-2-1-08675, to the United States in

27   accordance with Section XV (Notices) of this Decree and by e-mail to

28   acctsreceivable.CINWD@epa.gov; and to:

*U.S. and SCAQMD v. Lifoam Industries*                                    Consent Decree - Civil Action No.

- 6 -

1   EPA Cincinnati Finance Office

2   26 Martin Luther King Drive

3   Cincinnati, Ohio 45268

4   11.  Defendant shall not deduct the civil penalty paid under this Section in

5   calculating its federal income tax.

6   12.  Within thirty (30) days after the entry of this Consent Decree, Lifoam

7   shall pay a civil penalty to SCAQMD of one hundred fifty-seven thousand five

8   hundred dollars ($157,500.00).

9   13.  Payment shall be made by check made payable to the South Coast Air

10  Quality Management District at the following address:

11  South Coast Air Quality Management District
    District Prosecutor's Office
    21865 Copley Drive
12  Diamond Bar, California 91765
    Attn:    Nancy S. Feldman
13           Principal Deputy District Prosecutor

14  **V.  COMPLIANCE**

15  14.  Not later than the Effective Date, Defendant shall maintain

16  compliance with Rule 1175 or other legal requirements alleged to have been

17  violated with respect to the Facility, including, but not limited to, the

18  demonstration requirements of Rule 1175(c)(2) and the plan submission

19  requirements of Rule 1175(c)(3).

20  **VI.  INJUNCTIVE RELIEF**

21  15.  Beginning no later than the date of lodging and continuing until

22  termination of this Consent Decree the Defendants shall comply with the

23  following:

24      a.    Defendant shall not use raw polystyrene beads with a blowing

25  agent content exceeding 6.1% by weight.

26      b.    All pre-puff beads shall be aged for a minimum of twenty-four

27  (24) hours in the Bead Aging Operation before they are used in the shape molding

28  process.

*U.S. and SCAQMD v. Lifoam Industries*                Consent Decree - Civil Action No.

-7-

1          c.     At all times during the Manufacturing Operations, except as

2    permitted by Section E73 of the SCAQMD Permit, Manufacturing Emissions shall

3    be vented properly to the RTO in the manner required for compliance with Rule

4    1175 and the SCAQMD Permit. For purposes of this condition, Manufacturing

5    Emissions are not vented properly to the RTO if the pressure at the inlet of the

6    booster blowers is less than that required by the Permit Condition E193.3 of the

7    SCAQMD Permit. For purposes of this condition, Manufacturing Emissions are

8    not vented properly to the RTO if at any time any Bead Aging Operation, pre-

9    expansion, or molding equipment is disconnected from the RTO venting system or

10   if any ductwork, enclosure, or blower is not maintained in good condition and

11   operating with correct differential pressure.

12          d.     RTO Requirements

13          (1)    At all times during the Manufacturing Operation, except

14   as permitted by Section E73 of the SCAQMD Permit, Defendant shall

15   continuously operate the Facility's RTO at a set point temperature of at least 1,400

     degrees Fahrenheit, whenever the Facility is pre-expanding, aging, or molding.

16          (2)    The RTO operating temperature shall be continuously

17   monitored and recorded and the equipment shall be inspected, maintained and

18   calibrated in accordance with the manufacturer's specifications. Such recorded

19   results shall include, but not be limited to, circular chart recordings containing the

20   oxidizer chamber operating temperature for the RTO.

21          (3)    The operator shall review the records of the combustion

22   chamber temperature on a daily basis to determine if a Deviation occurs, or

23   Defendant shall install an alarm system to alert the operator when a Deviation

24   occurs.

25          (4)    Whenever a Deviation occurs, the operator shall inspect

26   this equipment to identify the cause of such Deviation, take immediate corrective

27   action to maintain the combustion chamber temperature at or above 1,400 degrees

28   Fahrenheit, and keep records of the duration and cause (including unknown cause,

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

                                   - 8 -

1  if applicable) of the Deviation and the corrective action taken.

2          (5)    The operator shall inspect and maintain all components

3  of this equipment in accordance with the manufacturer's specifications.

4        e.    Defendant shall maintain two (2) fixed magnehelic gauges at

5  the inlets of the two (2) booster blowers that vent the Bead Aging Operation. Each

6  magnehelic gauge shall accurately indicate the differential pressure between the

7  booster blower's inlet and the ambient air. Defendant shall operate and maintain

8  the two (2) booster blower magnehelic gauges at a minimum negative pressure of

9  1.0 inches of water column at all times except during maintenance periods allowed

10  by the SCAQMD Permit.

11      16.  Defendant shall maintain records as required in Section VIII for a

12  minimum of five (5) years pursuant to the requirements set forth in Section VIII

13  (Records).

14      17.  Defendant shall submit reports to EPA and take actions pursuant to

15  the requirements set forth in Section VII (Reporting Requirements).

**VII. REPORTING REQUIREMENTS**

16      18.  Defendant shall submit the following reports:

17        a.    <u>Reportable Deviations Report</u>.  As of the Effective Date of this

18  Consent Decree, all Reportable Deviations must be reported to EPA within twenty-

19  four (24) hours of such an occurrence, until termination of this Consent Decree.

20        b.    <u>Monthly Deviations Report.</u>  As of the Effective Date of this

21  Consent Decree and until termination of this Consent Decree, Defendant shall

22  submit in writing a monthly deviation report as follows:

23          (1)    A monthly deviation report shall be submitted to EPA for

24  any monthly reporting period in which an accumulation of Deviations, Reportable

25  or otherwise, exceeds five (5) percent duration of the Manufacturing Operations'

26  total operating time. A monthly deviation report shall also be submitted to EPA

27  for any monthly reporting period during which any equipment used for the

28  Manufacturing Operation was not venting properly to the RTO at any time during

*U.S. and SCAQMD v. Lifoam Industries*             Consent Decree - Civil Action No.

-9-

1   such monthly reporting period.  Each monthly deviation report shall be submitted
2   to EPA within seven Days of the end of the calendar month in which such
3   reporting requirement was triggered.

4                    (2)    Defendant shall prepare each monthly deviation report
5   pursuant to the requirements specified in 40 C.F.R. Part 64.9.  The report shall
6   include the total operating hours of the Facility, the total operating time of the
7   RTO, and the total accumulated duration of all Deviations for the monthly
8   reporting period.  In addition, the report shall state the total operating time when
9   any equipment used for the Manufacturing Operation was not venting properly to
10  the RTO, identify which equipment was not venting properly to the RTO, the
11  duration of time during which the equipment was not vented properly, and
12  summarize any corrective actions taken.

13          b.    Semi-Annual Report.  As of the Effective Date of this Consent
14  Decree, and until termination of this Consent Decree, Defendant shall submit in
15  writing and pursuant to Section XV (Notices) a copy of the semi-annual
16  monitoring reports submitted to the District.  Each such report shall be submitted to
    EPA within five days of the date such report is due to the District.

17          c.    QIP Report.  Defendant shall submit to EPA a Quality
18  Improvement Plan ("QIP") in accordance with 40 C.F.R. Part 64.8 to EPA if an
19  accumulation of Deviations exceeds five (5) percent duration of the Manufacturing
20  Operations' total operating time for any monthly reporting period.  The QIP shall
21  be submitted to EPA within forty-five (45) Days after the due date for the monthly
22  deviation report.

23          19.  All reports shall be submitted to the persons designated in Section XV
24  (Notices) of this Consent Decree.

25          20.  Each report submitted under this Section shall be signed by a
26  responsible official of Defendant, as defined at 40 C.F.R. § 70.2, and include the
27  following certification:

28      I certify under penalty of law that this document and all attachments were

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 10 -

prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

21. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

22. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify the EPA representative listed in Section XV (Notices) orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraphs.

23. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

24. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. RECORDS

25. In addition to the requirements in Section VII (Reporting Requirements), Defendant shall maintain records and provide copies to EPA if requested to do so. The records maintained shall include all of the following information:

a. Pursuant to 1175(e), Defendant shall maintain daily records of operations which include at least the following information: the amount of raw

*U.S. and SCAQMD v. Lifoam Industries*　　　　　Consent Decree - Civil Action No.

- 11 -

1  material processed, the equipment used, and blowing agent content for all raw
2  beads used in the Manufacturing Operation.  The records of blowing agent content
3  for raw beads shall consist of the manufacturer's Certificate Analysis identified in
4  the lot tickets for each lot of expandable polystyrene beads processed or the
5  laboratory results from the testing performed in accordance with District Method
6  306-91.  If the laboratory test results are used as the method of compliance
7  demonstration for any raw beads that have a lot ticket showing a blowing agent
8  content exceeding 6.1% by weight, Defendant shall:  (1) have the testing of
9  blowing agent content performed for such beads in accordance with District
10  Method 306-91 by an independent laboratory pursuant to Rule 304; and (2) the
11  testing shall be performed at least once every quarter of each calendar year.

12          b.     Defendant shall also maintain daily records of the duration and
13  cause (including unknown cause, if applicable) of Deviations, and the duration and
14  cause (including unknown cause, if applicable) if any equipment used for the
    Manufacturing Operation was not venting properly to the RTO.

15          c.     Monthly records of the total quantity of raw bead usage; total
16  hours of Manufacturing Operation, the manufacturer's Certificate Analysis for
17  each lot of expandable polystyrene beads processed; and any laboratory results
18  from testing performed in accordance with District Method 306-91.

19          d.     RTO operating temperature results including, but not limited to,
20  circular chart recordings containing the oxidizer chamber operating temperature for
21  the RTO.

22          26.  If requested by EPA the information required pursuant to the
23  preceding Paragraph 25 shall be compiled in a comprehensible and chronologically
24  ordered, single record or in one record documenting the information requested by
25  EPA.

26          27.  Defendant shall allow EPA personnel to enter into the Facility at all
27  reasonable times without prior notice for the purpose of taking samples,
28  conducting tests, observing operations, or reviewing records required to be kept

1 pursuant to this Consent Decree. This provision in no way limits or otherwise
2 affects any right of entry held by EPA pursuant to applicable federal or state laws,
3 regulations, or permits.

### IX. STIPULATED PENALTIES

5     28. Defendant shall be liable for stipulated penalties to the United States
6 for violations of this Consent Decree as specified below, unless excused under
7 Section X (Force Majeure). A violation includes failing to perform any obligation
8 required by the terms of this Decree including any workplan or schedule approved
9 under this Decree according to all applicable requirements of this Decree and
10 within the specified time schedules established by or approved under this Decree.

    29. Defendant shall notify EPA in writing of any failure to meet Consent
11 Decree requirements for which stipulated penalties may be due as soon as it has
12 knowledge of such failure. In addition, the United States may identify stipulated
13 penalties based on any information it acquires.

    30. For each of the instances listed below, Defendant shall pay any
15 stipulated penalty within ten (10) Days of receiving the United States' written
16 demand.

17     31. Failure to pay the civil penalty required to be paid under Section IV
18 (Civil Penalty) of this Decree when due: $ 1,000 per Day for each Day that
19 payment is late.

20     32. For each failure to comply with the requirements of Section V
21 (Compliance): $ 3,000 per violation/per Day.

22     33. For each failure to comply with Paragraph 15:

23         a.    For each Day in which Defendant fails to comply with the EPS
24 bead limitation set forth in Paragraph 15(a): $ 3,000 per violation/per Day

25         b.    For each failure to operate as required by Paragraph 15:
26 $2,200 per violation/per Day.

27         c.    For each failure to record information as required by
28 Paragraph 15: $2,000 per violation/per Day.

*U.S. and SCAQMD v. Lifoam Industries*          Consent Decree - Civil Action No.

- 13 -

34. For each failure to submit or create a report as required by Paragraph(s) 18-22:

| Per Violation/Per Day | Period of Noncompliance |
| --- | --- |
| $ 500 | 1st through 14th Day |
| $ 1,000 | 15th through 30th Day |
| $ 1,500 | 31st Day and beyond |

35. For each failure to create, maintain or submit records as required by Paragraph(s) 16 and 25-27: $ 2,000 per violation.

Accrual of Stipulated Penalties

36. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Penalties shall accrue regardless of whether EPA has notified Defendant of a violation.

37. The United States may in the unreviewable exercise of its discretion, reduce, or waive stipulated penalties otherwise due it under this Consent Decree.

38. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

39. Stipulated penalties shall continue to accrue as provided in Paragraph 36, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within ten (10) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

*U.S. and SCAQMD v. Lifoam Industries*    Consent Decree - Civil Action No.

- 14 -

c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within ten (10) Days of receiving the final appellate court decision.

40.   Unless otherwise provided in this Consent Decree, obligations of Defendant under the provisions of this Consent Decree after the signing, but prior to the Effective Date, shall be legally enforceable from the date this Consent Decree is signed by Defendant. Liability for stipulated penalties, if applicable, shall accrue for violations of such obligations and payment of such stipulated penalties may be demanded by the Plaintiff as provided in Paragraphs 36 and 37 of the Decree.

Payment of Stipulated Penalties

41.   Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

42.   Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal income tax.

43.   Defendant shall pay any stipulated penalty within ten (10) Days of receiving the United States' written demand.

44.   If Defendant fails to pay stipulated penalties according to the terms of this Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

45.   Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law.

*U.S. and SCAQMD v. Lifoam Industries*          Consent Decree - Civil Action No.

- 15 -

## X. FORCE MAJEURE

46.   "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.   The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.   "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

47.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA (directed to Director, Air Division, Attn: Air-5) within seven (7) calendar days of when Defendant first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.   Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.   Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 16 -

1  additional delay caused by such failure. Defendant shall be deemed to know of
2  any circumstance of which Defendant, any entity controlled by Defendant, or
3  Defendant's contractors knew or should have known.

4      48. If EPA agrees that the delay or anticipated delay is attributable to a
5  Force Majeure event, the time for performance of the obligations under this
6  Consent Decree that are affected by the Force Majeure event will be extended by
7  EPA for such time as is necessary to complete those obligations. An extension of
8  the time for performance of the obligations affected by the Force Majeure event
   shall not, of itself, extend the time for performance of any other obligation. EPA
9  will notify Defendant in writing of the length of the extension, if any, for
10  performance of the obligations affected by the Force Majeure event.

11      49. If EPA does not agree that the delay or anticipated delay has been or
12  will be caused by a Force Majeure event, EPA will notify Defendant in writing of
13  its decision. If EPA does not agree that a Force Majeure event has occurred, or
14  does not agree to the extension of time sought by Defendant, EPA's position shall
15  be binding, unless Defendant invokes the dispute resolution procedures under
16  Section XI (Dispute Resolution) of this Consent Decree.

17      50. If Defendant elects to invoke the dispute resolution procedures set
18  forth in Section XI (Dispute Resolution) of this Consent Decree, it shall do so no
19  later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding,
20  Defendant shall have the burden of demonstrating by a preponderance of the
21  evidence that the delay or anticipated delay has been or will be caused by a Force
22  Majeure event, that the duration of the delay or the extension sought was or will be
23  warranted under the circumstances, that best efforts were exercised to avoid and
24  mitigate the effects of the delay, and that Defendant complied with the
25  requirements of Paragraphs 46 and 47 above. If Defendant carries this burden, the
26  delay at issue shall be deemed not to be a violation by Defendant of the affected
27  obligation of this Consent Decree identified to EPA and the Court.

28

*U.S. and SCAQMD v. Lifoam Industries*     Consent Decree - Civil Action No.

- 17 -

## XI.  DISPUTE RESOLUTION

51.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

52.  Informal Dispute Resolution

a.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fifteen (15) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

53.  Formal Dispute Resolution

a.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

b.  The United States shall serve its Statement of Position within (45) Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 18 -

c.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

d.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

54.   Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.

Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 53, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

b.     Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 53, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

55.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 19 -

1  stayed pending resolution of the dispute as provided in Paragraph 39. If Defendant
2  does not prevail on the disputed issue, stipulated penalties shall be assessed and
3  paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

56.  The United States and its representatives, including attorneys,
contractors, and consultants, shall have the right of entry into the Facility, covered
by this Consent Decree, at all reasonable times, upon presentation of official
credentials, to:

    a.    monitor the progress of activities required under this Consent
Decree;

    b.    verify any data or information submitted to the United States in
accordance with the terms of this Consent Decree;

    c.    obtain samples and, upon request, splits of any samples taken
by Defendant or its representatives, contractors, or consultants;

    d.    obtain documentary evidence, including photographs and
similar data; and

    e.    assess Defendant's compliance with this Consent Decree.

57.  Upon request, Defendant shall provide EPA or its authorized
representatives splits of any samples taken by Defendant. Upon request, EPA shall
provide Defendant splits of any samples taken by EPA.

58.  Until five (5) years after the termination of this Consent Decree,
Defendant shall retain, and shall instruct its contractors and agents to preserve, all
non-identical copies of all documents, records, or other information (including
documents, records, or other information in electronic form) in its or its
contractors' or agents' possession or control, or that come into its or its
contractors' or agents' possession or control, and that relate in any manner to
Defendant's performance of its obligations under this Consent Decree. This
information-retention requirement shall apply regardless of any contrary corporate
or institutional policies or procedures. At any time during this

*U.S. and SCAQMD v. Lifoam Industries*       Consent Decree - Civil Action No.

- 20 -

1  information-retention period, upon request by the United States, Defendant shall
2  provide copies of any documents, records, or other information required to be
3  maintained under this Paragraph.

4  59. At the conclusion of the information-retention period provided in the
5  preceding Paragraph, Defendant shall notify the United States at least ninety (90)
6  Days prior to the destruction of any documents, records, or other information
7  subject to the requirements of the preceding Paragraph and, upon request by the
8  United States, Defendant shall deliver any such documents, records, or other
9  information to EPA. Defendant may assert that certain documents, records, or
10 other information is privileged under the attorney-client privilege or any other
11 privilege recognized by federal law. If Defendant asserts such a privilege, it shall
12 provide the following: (1) the title of the document, record, or information; (2) the
13 date of the document, record, or information; (3) the name and title of each author
14 of the document, record, or information; (4) the name and title of each addressee
15 and recipient; (5) a description of the subject of the document, record, or
16 information; and (6) the privilege asserted by Defendant. However, no documents,
17 records, or other information created or generated pursuant to the requirements of
   this Consent Decree shall be withheld on grounds of privilege.

18 60. Defendant may also assert that information required to be provided
19 under this Section is protected as Confidential Business Information ("CBI") under
20 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI,
21 Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

22 61. This Consent Decree in no way limits or affects any right of entry and
23 inspection, or any right to obtain information, held by the United States pursuant to
24 applicable federal laws, regulations, or permits, nor does it limit or affect any duty
25 or obligation of Defendant to maintain documents, records, or other information
26 imposed by applicable federal or state laws, regulations, or permits.

27
28

*U.S. and SCAQMD v. Lifoam Industries*                Consent Decree - Civil Action No.

- 21 -

### XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

62. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action and the July 14, 2005, Notice of Violation (Docket No. CAA-R9-05-0016) issued to Life-Like Products LLC by EPA through the date of lodging of this Consent Decree.

63. The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree, except as expressly stated in Paragraph 62. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA, implementing regulations, the California SIP or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 62. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

64. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 62 of this Section.

65. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.

- 22 -

laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Decree will result in compliance with provisions of the CAA or Rules 201, 203, 1175, and 2004(f)(1), or with any other provisions of federal, state, or local laws, regulations, or permits.

66.  This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

67.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.  COSTS

68.  The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV.  NOTICES

69.  Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re:  DOJ No. 90-5-2-1-08675

EPA, Region IX

Director, Air Division
Attention: Margaret Waldon, Air-5
United States Environmental Protection Agency
Region IX

1    75 Hawthorne Street
      San Francisco, California 94105

2

3    <u>To SCAQMD:</u>

4    Nancy Feldman, Esquire
      Senior Deputy District Prosecutor

5    South Coast Air Quality Management District
      21865 Copley Drive

6    Diamond Bar, California 91765

7    <u>To Lifoam Industries, LLC:</u>

8    John Cantlin
      Chief Executive Officer

9    Lifoam Industries, LLC
      235 Schilling Circle, Suite 111

10    Hunt Valley, MD 21031
      (office) 410.554.9604

11    (fax) 410.889.7619
      (Email) jcantlin@lifoam.com

12

13      70. Any Party may, by written notice to the other Parties, change its

14    designated notice recipient or notice address provided in this Consent Decree.

15      71. Notices submitted pursuant to this Section shall be deemed submitted

16    upon mailing, unless otherwise provided in this Consent Decree or by mutual

17    agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

18

19      72. The Effective Date of this Decree shall be the date upon which this

20    Decree is entered by the Court or a motion to enter the Consent Decree is granted,

     whichever occurs first, as recorded on the Court's docket.

21

## XVII. RETENTION OF JURISDICTION

22

23      73. The Court shall retain jurisdiction over this case until termination of

24    this Consent Decree, for the purpose of resolving disputes arising under this

     Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute

25    Resolution) and XVIII (Modification), or effectuating or enforcing compliance

26    with the terms of this Decree.

27

## XVIII. MODIFICATION

28      74. The terms of this Consent Decree, including any attached appendices,

1 may be modified only by a subsequent written agreement signed by all the Parties.
2 Where the modification constitutes a material change to this Decree it shall be
3 effective only upon approval by the Court.

4 75. Any disputes concerning modification of this Decree shall be resolved
5 pursuant to Section XI (Dispute Resolution) of this Decree, provided, however,
6 that, instead of the burden of proof provided by Paragraph 54b., the Party seeking
7 the modification bears the burden of demonstrating that it is entitled to the
requested modification in accordance with Federal Rule of Civil Procedure 60(b).

8

### XIX. TERMINATION

9 76. After Defendant has maintained continuous satisfactory compliance
10 with this Decree for a period of two (2) years following the Effective Date and has
11 paid the civil penalty as required by Section IV (Civil Penalty), any accrued
12 stipulated penalties required by Section IX (Stipulated Penalties) and any
13 enforcement expenses required by Section XIV (Costs) of this Decree, Defendant
14 may serve upon the United States a Request for Termination stating that Defendant
15 has satisfied all conditions for termination as set forth above, together with all
16 necessary supporting documentation.

17 77. Following receipt by the United States of Defendant's Request for
18 Termination, the Parties shall confer informally concerning the Request and any
19 disagreement that the Parties may have as to whether Defendant has satisfactorily
20 complied with the requirements for termination of this Consent Decree. If the
21 United States agrees that the Decree may be terminated, the Parties shall submit,
22 for the Court's approval, a joint stipulation terminating the Decree.

23 78. If the United States does not agree that the Decree may be terminated,
24 Defendant may invoke Dispute Resolution under Section XI (Dispute Resolution)
25 of this Decree. However, Defendant shall not seek Dispute Resolution of any
26 dispute regarding termination under Paragraph 53 of Section XI (Dispute
27 Resolution), until forty-five (45) Days after service of its Request for Termination.

28

*U.S. and SCAQMD v. Lifoam Industries*     Consent Decree - Civil Action No.

- 25 -

## XX. PUBLIC PARTICIPATION

79. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

80. Each undersigned representative of Defendant, the Deputy Section Chief for the Environment and Natural Resources Division of the Department of Justice, and the representative of SCAQMD certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

81. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

82. Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process with respect to the Complaint and all matters arising under or relating to this Consent Decree.

## XXII. INTEGRATION

83. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings,

*U.S. and SCAQMD v. Lifoam Industries*          Consent Decree - Civil Action No.

- 26 -

1   whether oral or written, concerning the settlement embodied herein. Other than

2   deliverables that are subsequently submitted and approved pursuant to this Decree,

3   no other document, nor any representation, inducement, agreement, understanding,

4   or promise, constitutes any part of this Decree or the settlement it represents, nor

5   shall it be used in construing the terms of this Decree.

6                       **XXIII. FINAL JUDGMENT**

7       84.  Upon approval and entry of this Consent Decree by the Court, this

8   Consent Decree shall constitute a final judgment of the Court as to the United

9   States, SCAQMD, and Lifoam Industries, LLC, previously known as Life-Like

10   Products LLC.

11   IT IS SO ORDERED and ENTERED.

12

13

14

15   DATED:   **JUL 2 9 2010**

16                         UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

*U.S. and SCAQMD v. Lifoam Industries*         Consent Decree - Civil Action No.

- 27 -

FOR PLAINTIFF UNITED STATES OF AMERICA:

_5/18/10_
Date

ELLEN MAHAN
Deputy Section Chief
Environment and Natural Resources
Division
United States Department of Justice

_5/19/10_
Date

ELISE S. FELDMAN
Trial Attorney
Environment and Natural Resources
Division
United States Department of Justice

*U.S. and SCAQMD v. Lifoam Industries*          Consent Decree - Civil Action No.

- 28 -

1  FOR PLAINTIFF SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT:

2

3

4

5   _May 5/2010_

6   Date

7                                    NANCY FELDMAN
                                     Senior Deputy District Prosecutor
8                                    South Coast Air Quality Management
                                     District
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  FOR LIFOAM INDUSTRIES, LLC, previously known as LIFE-LIKE
2  PRODUCTS LLC:

3

4

5  _April 27, 2010_                          _____
   Date                                      JOHN CANTLIN
6                                            Chief Executive Officer
7                                            Lifoam Industries, LLC
                                             235 Schilling Circle, Suite 111
8                                            Hunt Valley, MD  21031
9                                            Telephone:  410.554.9604
10                                           Fax:  410.889.7619
                                             E-mail: jcantlin@lifoam.com
11

12  If different from above, the following is the name and address of Lifoam
    Industries, LLC, previously known as Life-Like Products LLC's agent for service
13  of process, and the name and address of Lifoam Industries, LLC's counsel.
14  Counsel may act as agent for service.

15

16                                           Attorney:

17

18                                           _____
19                                           JONATHAN S. MARTEL
20                                           Arnold & Porter LLP
                                             555 Twelfth Street, NW
21                                           Washington, DC 20004-1206
                                             Telephone: 202.942.5470
22                                           Fax: 202.942-5999
23                                           E:mail:  Jonathan_Martel@aporter.com

24

25

26

27

28

*U.S. and SCAQMD v. Lifoam Industries*        Consent Decree - Civil Action No.

                              - 30 -

1    FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

2

3

4

5

6    Dated: _May 7, 2010_

7    JARED BLUMENFELD
     Regional Administrator
8    U.S. Environmental Protection Agency,
9    Region 9
     San Francisco, CA
10

11

12

13

14   Dated: _5.7.10_

15   NANCY MARVEL
     Regional Counsel
16   U.S. Environmental Protection Agency,
17   Region 9
     San Francisco, CA
18

19

20
     OF COUNSEL:
21   Margaret Alkon
22   Assistant Regional Counsel
     U.S. Environmental Protection Agency, Region 9
23   75 Hawthorne Street
24   San Francisco, CA 94105

25

26

27

28

*U.S. and SCAQMD v. Lifoam Industries*                    Consent Decree - Civil Action No.
                                    - 31 -